# Contract of Insurance

| | |
|---|---|
| ***Insured:*** | KEY LAKES INC |
| ***Policy Number:*** | MAHUL2000379 |
| ***Renewing Policy Number:*** | MAHUL1900379 |
| ***Period:*** | 10th May 2020 to 10th May 2021 |
| ***Type:*** | Hull & Machinery / Increased Value |

**Aon UK Limited**
Registered Office | The Aon Centre | The Leadenhall Building | 122 Leadenhall Street | London | EC3V 4AN
Registered in England & Wales No. 210725 | VAT Registration No. 480 8401 48
Aon UK Limited is authorised and regulated by the Financial Conduct Authority



# Information for Aon Clients

This document is the Insurer agreed Contract of Insurance which provides evidence of cover in accordance with the heading "Insurer Contract Documentation" in the Risk Details section.

The Contract Administration and Advisory Sections facilitate the administration of the placement between the Insurer and Broker.

**To ensure that the insurance coverage we have placed for you meets your needs, please review this document carefully (including but not limited to applicable limits, sub-limits, deductibles, terms and conditions). In the event that this document contains errors or otherwise does not meet your needs, please advise us immediately as this will reduce the chance that you later sustain uninsured losses. This also applies to any queries you may have about the document. Unless we hear from you to the contrary within 30 days, we and you will deem the document provided to you fully conforms with your needs and instructions.**

## Remuneration

Aon may act as a Managing General Agent (MGA) on behalf of an Insurer for a single product, product line or their participation. In addition to any commission earned by the Global Broking Centre (GBC), the MGA is remunerated for the work undertaken on behalf of the Insurer and this may include profit or contingent commission.

Any participation placed via such an arrangement can be clearly identified as Aon Underwriting Managers (AUM) or Maven Underwriters on behalf of the applicable Insurer within the Security Details Section.

Aon may earn other remuneration from Insurers in respect of administration and management activities it undertakes at the time of placement, or during the period of the Insurance, in relation to specific products and facilities which facilitate the Insurers' own activities. Insurers may also ask the GBC to place facultative reinsurance, and may independently remunerate the GBC for these services through the payment of commission.

Further details will be provided by Aon on request.

## Taxes

Over the course of the placement of your Insurance Aon collect information relating to the underlying risks and the location of such risks. This information can assist in identifying premium allocations by country/territory and to produce tax schedules for inclusion in contract documentation. It is your obligation to ensure the accuracy of such information.

Where applicable, Aon will collect the tax amounts due and pass them to the Insurer(s) to settle with the relevant tax authorities. Insurers will be responsible for confirming that the taxes identified for collection in the tax schedule are correct. In certain circumstances, taxes may be payable by the Insured . Whilst we endeavour to identify such taxes, please note that Aon is not a tax adviser and it is your responsibility to ensure that such taxes are correctly identified and remitted. If you require independent advice on your tax liabilities, you should consult with your tax adviser.

It is important to note that where a tax schedule is completed this merely represents a proposed apportionment of premium calculated on a pro rata basis, and utilises rates that Aon has taken from tax calculation systems, as at the date the tax schedule was produced. The purpose of tax schedules is to provide information to Insurers which they may, if they wish, use in establishing an apportionment of premium for taxation and legislative reporting purposes.

This procedure in no way changes Insurers' responsibilities for making this calculation and/or ensuring that the correct tax rates are applied.

# RISK DETAILS

**UNIQUE MARKET REFERENCE**     B1526MAHUL2000379

**TYPE**     Marine

**INSURED**     Key Lakes Inc and/or subsidiary and/or affiliated and/or associated and/or parent and/or stakeholders and/or employees etc. for their respective rights and interests

Key Lakes III, Inc. and/or subsidiary and/or affiliated and/or associated and/or parent and/or stakeholders and/or employees etc. for their respective rights and interests with respects to "EDGAR B. SPEER".

Key Lakes IV, Inc. and/or subsidiary and/or affiliated and/or parent and/or stakeholders and/or employees etc. for their respective rights and interests with respects to "GREAT REPUBLIC"

<u>Insured Address:</u>
212 S 37TH AVE W STE 200
 DULUTH 5858072819
DULUTH
United States of America

**VESSEL(S)**     "EDGAR B. SPEER" and as per schedule attached.

Including, if required, additional vessels on values, terms, conditions and rates to be agreed with Insurers hereon.

**PERIOD**     From 00.01 hours 10th May 2020 until 00.01 hours 10th May 2021 Central Standard Time.

**INTEREST**     <u>Section 1</u>
Hull and Machinery: Outfit etc. and everything connected nothing excluded.

<u>Section 2</u>
Disbursements and/or Increased Value (including Excess Liabilities)

**SUM(S) INSURED / LIMITS**     100% of agreed values and amounts as per schedule attached.

**DEDUCTIBLES**     <u>Section1</u>
USD 400,000 each vessel, any one accident or occurrence excluding total loss which payable in full.

**TRADING / LOCATION**     Great Lakes, St. Lawrence River, Gulf of St. Lawrence and their tributaries, or held covered at a premium, if any, to be agreed with underwriters.

**CONDITIONS**         As per wording attached.
                       LSW986A - Single Policy Only For Composite Assureds Clause as attached.
                       Service of Suit Clause NMA 1998 as attached, with any senior partner of the law firm Mendes and Mount, 750 Seventh Avenue, NY, NY 10019-6829 to accept service of suit on behalf of underwriters.
                       Loss Payee Clauses as attached.
                       Ship-to-Ship Transfer Clause as attached.
                       Institute Radioactive Contamination, Chemical, Biological, Bio-chemical and Electromagnetic Weapons Exclusion Clause 10/11/03 (CL. 370) as attached.
                       Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause 10/11/03 USCAN B 29/01/04 as attached.
                       Marine Cyber Endorsement LMA5403, as attached.
                       Brokers Cancellation Clause, as attached.
                       Quarterly premium payments.
                       Bail Clause as attached.
                       Sanction Limitation and Exclusion Clause JH2010/009 as attached.

**CHOICE OF LAW &**    This insurance shall be governed by and construed in accordance
**JURISDICTION**       with the laws of Pennsylvania and each party agrees to submit to the exclusive jurisdiction of any court of competent jurisdiction in the United States of America.

**PREMIUM / RATE**     As per schedule attached. All rates are prior to the application of the continuity credit.

                       Payable in quarterly instalments as follows:-
                               25%    10th May 2020
                               25%    10th August 2020
                               25%    10th November 2020
                               25%    10th February 2021

**OTHER DEDUCTIONS**   Continuity Credit Clause
**FROM PREMIUM**       80% of the annual premium is payable as per policy terms. The balance of 20% of the annual premium will become payable at the expiry of this policy.

                       However, in the event that this insurance is renewed with the same Slip Leader and Agreement Parties and similar order (or as may be agreed by the Slip Leader and Agreement Parties) the balance of the annual premium will not be payable to underwriters.

                       Profit Credit Clause
                       It is agreed that on expiry of the 12 month period there shall be payable a credit in respect of this cover calculated at 12.50%, applied to a percentage as specified hereinafter, of the net premium received by underwriters hereon, after all adjustments for additional and/or return premiums.

                       The percentage of net premium referred to above shall be the percentage credit to underwriters calculated on joint hull basis (i.e. for three expired years and current if adverse and adjusted for deterioration or improvement in four earlier years), such percentage being applied to the current year net premium.

For calculation purposes the 12 month period commencing 10th May 2017 shall be deemed the first year of this clause, however this shall include any deterioration in the 4 prior years up to this date.

If such percentage credit is below 50% no such commission will be payable.

**PREMIUM PAYMENT TERMS**

As per Premium Payment Clause LSW 3001 (each instalment 60 days / notice of cancellation 15 days) as attached.

**TAX(ES) PAYABLE BY INSURED AND ADMINISTERED BY INSURERS**

None.

**RECORDING, TRANSMITTING & STORING OF INFORMATION**

Aon UK Limited, who may retain risk & claim data, information and/or documents electronically, and where done so these documents shall be regarded with the same legal effect as the original documents.

**INSURER CONTRACT DOCUMENTATION**

This document details the contract terms entered into by the insurer(s) and constitutes the contract document.

Evidence of Cover is to be provided by Aon UK Limited in the form of a copy of this Market Reform Contract within 30 days of inception. The original Market Reform Contract will be held in the offices of Aon UK Limited.

Insurers hereon agree that any pages within the Risk Details and Information sections of this Market Reform Contract that contain handwritten amendments made by Insurers may be re-typed and agreed by the Lead Insurer only for the purposes of issuing Evidence of Cover in the form of a copy of this Market Reform Contract. Pages containing handwritten amendments will be held in the offices of Aon UK Limited.

If the terms and conditions of this contract indicate that a wording is required hereon, then said wording is to be produced and/or presented by Aon UK Limited and submitted to the Lead Insurer only for agreement.

## RISK SCHEDULES

**Vessel Details:**

| No. | Vessel | Type | IMO number | Built | GRT | DWT | Class |
|---|---|---|---|---|---|---|---|
| 1 | Edgar B. Speer | BBU | 7625952 | 1980 | 34,620 | 75,187 | ABS |
| 2 | Edwin H. Gott | BBU | 7606061 | 1979 | 35,592 | 76,011 | ABS |
| 3 | Roger Blough | BBU | 7222138 | 1972 | 22,041 | 47,280 | ABS |
| 4 | Arthur M. Anderson | BBU | 5025691 | 1952 | 12,341 | 27,128 | ABS |
| 5 | Cason J. Calloway | BBU | 5065392 | 1952 | 12,309 | 26,778 | ABS |
| 6 | Philip R. Clarke | BBU | 5277062 | 1952 | 11,623 | 27,128 | ABS |
| 7 | John G. Munson | BBU | 5173670 | 1952 | 15,179 | 26,011 | ABS |
| 8 | Presque Isle | ITB | 7303877 | 1973 | 1,578 (Tug) | 57,500 (barge) | ABS |
| 9 | Great Republic | BBU | 7914236 | 1981 | 12,158 | 25,601 | ABS |

**Hull & Machinery / Increased Value**

| No. | Vessel | Hull Value (USD) | Annual Port Risks Rate | Annual Navigating Rate | Pro Rata P.R. Days | Pro Rata Nav. Days | Annual Composite Premium | Increased Value Amount (USD) | Annual Disbs Rate | I.V. Gross Premium (USD) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Edgar B. Speer | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| 2 | Edwin H. Gott | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| 3 | Roger Blough | 32,000,000 | ■■■■ | ■■■■ | 68 | 297 | ■■■■ | 8,000,000 | ■■■■ | ■■■■ |
| 4 | Arthur M. Anderson | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| 5 | Cason J. Calloway | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| 6 | Philip R. Clarke | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| 7 | John G. Munson | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| 8 | Presque Isle | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| 9 | Great Republic | ■■■■ | ■■■■ | ■■■■ | ■ | ■ | ■■■■ | ■■■■ | ■■■■ | ■■■■ |
| | | ■■■■ | | | | | ■■■■ | ■■■■ | | ■■■■ |

# RISK DETAILS - WORDING

All terms and conditions as defined within Editable Wording

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

JH2010/009
29 July 2010

## INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1 ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

    1.5 any chemical, biological, bio-chemical, or electromagnetic weapon.

10/11/03
CL370

### U.S.A. & CANADA ENDORSEMENT FOR THE
### INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL,
### BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE 10/11/03

This policy is subject to the Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical And Electromagnetic Weapons Exclusion Clause 10/11/03 (RACCBE).  The inclusion of RACCBE in this policy is material to underwriters' willingness to provide coverage at the quoted terms, conditions and rates.

It is the intent of the parties to give maximum effect to RACCBE as permitted by law.

In the event that any portion of RACCBE may be found to be unenforceable in whole or in part under the law of any state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, the remainder shall remain in full force and effect under the laws of that state, territory, district, commonwealth or possession, province or territory.  Further, any such finding shall not alter the enforceability of RACCBE under the laws of any other state, territory, district, commonwealth or possession of the U.S.A., or any province or territory of Canada, to the fullest extent permitted by applicable law.

29/01/04
USCAN B


### MARINE CYBER ENDORSEMENT

1    Subject only to paragraph 3 below, in no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus, computer process or any other electronic system.


2    Subject to the conditions, limitations and exclusions of the policy to which this clause attaches, the indemnity otherwise recoverable hereunder shall not be prejudiced by the use or operation of any computer, computer system, computer software programme, computer process or any other electronic system, if such use or operation is not as a means for inflicting harm.


3    Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, paragraph 1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.


LMA5403
11 November 2019

## SINGLE POLICY ONLY FOR COMPOSITE ASSUREDS

It is hereby noted and agreed that Underwriters' liability under any and all contracts of insurance evidenced or deemed to be evidenced by this Policy shall be the liability so specified in this Policy as applicable to any one such contract and shall not (save as so specified) be varied or deemed varied by virtue of the number or type of Assureds or claims under this Policy.

Subject otherwise to the terms, conditions and limitations of this Policy.

09/97
LSW986A

## BAIL CLAUSE

It is agreed in the event of loss and/or damage giving rise to a possible claim under this policy to enable the Insured to provide bail and/or bank guarantee and/or limitation bond, Underwriters shall provide counter-guarantees in the wording of the London Market "Short Form". The extent of the Underwriters' obligations under this clause shall be confined to their liability in accordance with the terms, conditions and amounts of the policy.

## BROKERS CANCELLATION CLAUSE

Whereas (notwithstanding anything in this policy to the contrary) credit has been given by Aon Limited (hereinafter called the Brokers) for premiums due to them hereon, it is hereby agreed between the Insured and the Brokers that in the event of the premium or any instalment thereof not having been received by the Brokers as soon as it has become due to them and/or in the event of the Insured not having paid the premium or any instalment thereof prior to the expiry of the ten days hereinafter mentioned, the Brokers are hereby authorised by the Insured on the expiry of ten days from dispatch to the Insured or their agents of a telegram, registered letter or electronically transmitted message demanding payment to cancel risk under this policy from expiry of the aforesaid ten days or from any later date at the sole discretion of the Brokers and on such cancellation the Underwriters shall not be responsible for accidents that can be proved to have happened after such cancellation and the Brokers may collect and retain any return premium hereon. In such case Underwriters hereby agree to cancel and return to the Brokers any premium that may have been then already received by Underwriters in excess of pro rata premium up to the cancelling date or, if the premium shall not then have been paid to the Underwriters, they shall receive from the Brokers the balance of premium up to the said cancelling date. In the event of the interest hereby insured being a Total, Constructive, Arranged or Compromised Total Loss from any cause whatsoever insured hereunder, any premium (including all future instalments) unpaid to the Brokers shall immediately become due and payable and Brokers shall be entitled to take credit therefor.

This clause shall not prejudice or affect the Brokers' lien on this policy for any amount remaining due to them, whether in connection with this policy or otherwise, or any other rights of the Brokers against the Insured.

## PREMIUM PAYMENT CLAUSE

Notwithstanding any provision to the contrary within this contract or any endorsement hereto, in respect of non payment of premium only the following clause will apply.

The (Re)Insured undertakes that premium will be paid in full to (Re)Insurers within *[As contained within the Risk Details]* days of inception of this contract (or, in respect of instalment premiums, when due).

If the premium due under this contract has not been so paid to (Re)Insurers by the *[As contained within the Risk Details]* day from the inception of this contract (and, in respect of instalment premiums, by the date they are due) (Re)Insurers shall have the right to cancel this contract by notifying the (Re)Insured via the broker in writing. In the event of cancellation, premium is due to (Re)Insurers on a pro rata basis for the period that (Re)Insurers are on risk but the full contract premium shall be payable to (Re)Insurers in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this contract.

It is agreed that (Re)Insurers shall give not less than *[As contained within the Risk Details]* days prior notice of cancellation to the (Re)Insured via the broker. If premium due is paid in full to (Re)Insurers before the notice period expires, notice of cancellation shall automatically be revoked. If not, the contract shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

30/09/08
LSW3001

## GENERAL CONDITIONS ALL SECTIONS:

It is hereby understood and agreed that the word "Insured" shall be considered as applying to each Corporation and/or Individual comprising the Insured in the same manner as if a separate Policy had been issued to each of them.

The Underwriters' total liability in respect of all Corporations and/or Individuals comprising the Insured shall not however exceed in the aggregate for each occurrence the Limit of Liability stated herein.

The Underwriters further agree to waive all rights of subrogation against all or any of The Corporations and/or Individuals comprising the Insured.

It is agreed to the extent that the Named Insured is obligated by contract, agreement or otherwise to name as additional Insureds and/or waive rights of subrogation against, anyone person or organization hereunder, the Underwriters agree that such persons or company shall be considered as Additional Insureds and rights of subrogation waived, but only with respect to operations performed by or on behalf of the Named Insureds, and which would in any event be covered under this insurance and shall not operate to increase the limit of liability hereunder. Further agreed that where required by contract the cover afforded hereon will be considered primary without right of contribution.

It is understood and agreed that this insurance covers automatically, up to USD 52,000,000 Hull value USD 13,000,000 Increased Value amount and policy limits in respect of other Sections on each vessel purchased or chartered by the Insured. The agreed hull valuation shall be the purchase price with respect to purchased vessels, and the value agreed between Owners and the Insured with respect to chartered vessels.

The Insured will report within 90 days of a vessel coming at risk under this automatic coverage, advising date attaching hereunder, valuation, name and description of vessel.

In respect of this insurance Underwriters hereon agree that the Insured is not be prejudiced by any unintentional delay or omission in reporting hereunder, or any unintentional error in amount of reported values/interests, provided prompt notice be given to these Underwriters as soon as said facts become known to the Insured.

## SECTION 1 – HULL AND MACHINERY

Subject to the terms and conditions of the American Institute Great Lakes Hull Clauses (March 9th 1978) with lines 4/5 deleted, "provided ....... insured" deleted from lines 6/8, lines 29/39 deleted, the words "covered hereunder" added in line 48 after 'the Vessel' lines 67/76 deleted, "provided ....... hereunder" deleted from line 101, lines 149/154 and 169/178 deleted and "or charterer" deleted from lines 215/217.

Excluding 4/4ths Collision Liability.

Season of Navigation March 15th to January 31st both days inclusive, (March 1st to January 15th in respect of the "PRESQUE ISLE" or held covered at a premium to be agreed by Underwriters hereon). Pre and post season additional premiums at pro rata slip rates.

Underwriters agree to pay cargo's proportion of General Average without application of the deductible up to a limit of USD 150,000.

American Hull Insurance Syndicate Liner Negligence Clause for Attachment to American Institute Great Lakes Hull Clauses (March 9th, 1978).

Braemar and/or North American Marine to represent Underwriters / Insured at survey.

Agreed North American Marine Inc. can act for Underwriters / Insured for approval of winter moorings of all vessels.

Lines 72 and 73 of the Great Lakes Hull Clauses are deleted and replaced with provisions for pre and post season sailing to be in accordance with trip approval recommendations as outlined by North American Marine, with recommendations to be complied with prior to each pre and post season sailing.

Each vessel deemed separately insured except as provided in the Deductible Average Clause and Pair and Set Provisions herein for "PRESQUE ISLE".

This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats or their owners when the Insured or the agent of the Insured accepts such contract in accordance with established local practice. Where in accordance with such practice, pilotage or towage services are provided under contracts requiring the Insured or the agent of the Insured:

(a) to assume liability for damage resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel, or

(b) to indemnify those providing the pilotage or towage services against loss or liability for any such damages.

It is agreed that amounts paid by the Insured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability Clause in this Policy to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreements. Provided always that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability Clause, including this Clause, be greater than the amount of any statutory limitation of liability to which owners are entitled or would be entitled if liability under any contractual obligation referred to in this clause were included among the liabilities subject to such statutory limitations.

The Company may place business with markets with which it or its affiliates are connected.
Also, it may have arrangements with certain markets that generate revenue to the Company based on general trading.

No representation is hereby made in relation to the financial security of insurers hereon.

It is agreed that for periods during which vessels are under charter, this insurance includes the interest of the charterer as an additional Insured.

It is agreed that insurance is provided by the policies to which this endorsement is attached and will not be prejudiced during the time that vessels are undergoing repairs, alterations, building, rebuilding, outfitting or damage repairs, this insurance includes to the extent of any peril not recoverable hereunder perils recoverable under the terms and conditions of the American Institute Builder's Risks Form 13L (February 8, 1979).

It is agreed that the term "new management" in the Change of Ownership Clause refers only to the transfer of the management of the vessel insured from one firm or corporation who have been managing the vessel to another and has no reference to any internal changes in the offices of the Insured.

It is agreed that Lay-up Returns are only collectible between dates of season of navigation, both days inclusive.

Lay-up returns will be payable on the presentation of the claim any time after completion of the season of navigation. In the event that a vessel is a Total Loss after payment of a return of premium for lay-up but before the expiration of the policies, then such payment will be deducted from the Total Loss Claim.

Subject to Part(s) Removed Clause LSW 789 (04/94).

This insurance shall respond for the full amount of G.A. Salvage or Sue and Labour expenses from the vessel insured hereunder.

Subject to Leased Equipment Clause LSW 779 (04/94).

Subject to the American Institute S.R. & C.C. Endorsement (September 8th 1959) amended to read "War, Strikes and Related Exclusions" in lieu of "F.C. & S. Clause" and without application of deductible.

With liberty to insure as required, additional amounts on any interests P.P.I. etc., without prejudice to this Insurance.

"PRESQUE ISLE":- Special conditions:

1. Agreed that tug of "PRESQUE ISLE" is permitted to navigate while disengaged for annual dry-docking trip.

2. Warranted no towing of any vessel other than the barge insured hereunder, or held covered.

3. In the event of an Actual or Constructive Total Loss of either one of the Vessels, the full aggregate amount as to which both Vessels are insured under any such policy shall be payable to the Shipowner, the Mortgagee or the United States of America as their respective interests may appear.

4. The Insured agrees that if requested by Underwriters in the event of claim arising under the extension of coverage provided above, they will credit up to the amount of said claim, the value that may be agreed between the Underwriters and the Insured of the surviving subject matter of this insurance as the Insured can reasonably be expected to use in their operations, or of any proceeds realized by the Insured from the sale of the surviving unit.

5. If Underwriters and the Insured are unable to agree with respect to the value of the surviving subject matter of this insurance as the Insured can reasonably be expected to use in their operations, such value shall be determined by a ship valuer whose appointment shall be agreed upon by the Insured and the Underwriters, and whose valuation shall be binding on both parties. In the event of failure of both parties to agree on a ship valuer, each side will appoint his own nominee and they in turn will elect a referee who will also be a recognized ship values. The decision of the arbitrator shall be final and binding on all parties and shall be completed within sixty days of the decision to arbitrate.

6. Lines 157-160 of the American Institute Great Lakes Hull Clauses (March 9, 1978) are hereby amended to the extent only that the above provisions make such amendment necessary, all other terms and conditions remaining unchanged.

## SHIP TO SHIP TRANSFER CLAUSE

It is noted and agreed that vessels insured hereunder have liberty to conduct ship to ship cargo operations to or from any other vessel(s), provided that:

a)   The weather conditions and transhipment location or position are satisfactory to the master of the insured vessel and that he retains the right at all times at his discretion to abandon or discontinue the operation if at any time he considers it to become unsafe.

b)   All relevant permissions from proper authorities to conduct ship to ship operations have been obtained.

## SECTION 2 - INCREASED VALUE:

Subject to the terms and conditions of the American Institute Great Lakes Increased Value and Excess Liabilities Clauses (March 9th, 1978) with lines 4/5 deleted, "provided…insured" deleted from lines 5/7, "provided hereunder" deleted from 73, "or charterer" deleted from lines 123/125.

Including A.H.I.S. Liner Negligence Clause (3.11.77).

Subject to all special terms and conditions of the Hull and Machinery Policy or Policies so far as applicable.

In respect of "PRESQUE ISLE" -

1. Each vessel deemed separately insured except as provided in the Pair and Set Provisions herein.

2. In the event of an Actual or Constructive Total Loss of either one of the Vessels, the full aggregate amount as to which both Vessels are insured under any such policy shall be payable to the Shipowner, the Mortgagee or the United States of America as their respective interests may appear.

3. The Insured agrees that if requested by Underwriters in the event of claim arising under the extension of coverage provided above, they will credit up to the amount of said claim, the value that may be agreed between the Underwriters and the Insured of the surviving subject matter of this insurance as the Insured can reasonably be expected to use in their operations, or of any proceeds realized by the Insured from the sale of the surviving unit.

4. If Underwriters and the Insured are unable to agree with respect to the value of the surviving subject matter of this insurance as the Insured can reasonably be expected to use in their operations, such value shall be determined by a ship values whose appointment shall be agreed upon by the Insured and the Underwriters, and whose valuation shall be binding on both parties. In the event of failure of both parties to agree on a ship values, each side will appoint his own nominee and they in turn will elect a referee who will also be a recognized ship values. The decision of the arbitrator shall be final and binding on all parties and shall be completed within sixty days of the decision to arbitrate.

## LOSS PAYEE CLAUSES

**With Respect to the vessel "EDGAR B. SPEER"**

**Insured:**
Key Lakes III, Inc., as Bareboat Charterer;
Wisconsin Central Ltd, as Time Charterer; Banc of America Leasing & Capital LLC, as Owner; Key Lakes, Inc. as Parent; Key Lakes Holding Co., Inc. as Parent; Keystone Shipping Co., as Agent; Chas Kurz & Co., Inc as Holding Company.

**Loss Payee:**
Losses, if any, payable to Banc of America Leasing & Capital LLC as Owner and thereafter to Key Lakes III, Inc. as Bareboat Charter, or order. However, notwithstanding that the insurance is payable in accordance with the preceding sentence, all losses except total loss, under polices of insurance carried on the vessel shall be payable direct for the repair, salvage or other charges involved, or if the Bareboat Charterer shall have first paid for any or all repairs or for any or all salvage or other charges, and the underwriters have received satisfactory proof thereof, to the Bareboat Charterer, provided that in the case of (1) a loss in the excess of USD 1,000,000 or (2) receipt by underwriters of a notice from the Owner that an Event of Default under the Bareboat Charter Agreement Dated November 16, 2010 has occurred and is continuing, the Underwriters shall not make payment to the Bareboat Charterer without first obtaining the written consent thereto by the Owner, and in either of which cases all payment shall be payable to the Owner, and thereafter to the Bareboat Charterer, or order.

**With respect to the vessel "GREAT REPUBLIC"**

**Insured:**
Key Lakes IV, Inc., as Bareboat Charterers; Wisconsin Central Ltd, as Time Charterer; Banc of America Leasing & Capital LLC as Owner, Keystone Shipping Co., as Agents; Chas, Kurz & Co., Inc., as Parent Company

**Loss Payee:**
Losses, if any, payable to Banc of America Leasing & Capital LLC as Owner and thereafter to Key Lakes IV, Inc. as Bareboat Charterer, or order. However, notwithstanding that the insurance is payable in accordance with the preceding sentence, all losses, except total loss, under policies of insurance carried on the vessel shall be payable direct for the repair, salvage or other charges involved, or if the Bareboat Charterer shall have first paid for any or all repairs or all salvage or other charges, and the underwriters have received satisfactory proof thereof, to the Bareboat Charterer, provided that in the case of (1) a loss in excess of USD 1,000,000 or (2) receipt by underwriters of a notice from the Owner that an Event of Default under the Bareboat Charter Agreement Dated May 13, 2011 has occurred and is continuing, the Underwriters shall not make payment to the Bareboat Charterer without first obtaining the written consent thereto by the Owner, and in either of which cases all payment shall be payable to the Owner, and thereafter to Bareboat Charterer or order.

**Special Provisions:**
1.   Underwriters shall provide at least 30 days prior notice be given to the Owner by confirmed fax, overnight courier or other means whereby notice is received by the Owner not later than the next business day after such notice is sent in the event of cancellation, reduction in coverage, material modification by the insurer without the written consent of the Owner.

In the event of non-payment of premium when due, the underwriters undertake not to exercise any right of cancellation which they may have without giving ten (10) days prior notice confirmed in writing of such cancellation to the Owner an opportunity of paying any balance of such premiums in respect of the Vessel which may be in default. If the Vessel is insured under fleet cover, the underwriters agree that the event of the non-payment of premium for the fleet, the underwriters will nevertheless continue the insurance in respect of the Vessel if the Owner shall pay or cause to be paid the pro-rata portion of the premium which is allocable to the Vessel

2.   There shall be no recourse against the Owner for the payment of premiums

3. This insurance will be primary without rights of contribution from any insurance which is carried by the Owner.

4. All provisions of this insurance except the limits of liability shall operate in the same manner as if there were a separate policy covering each insured

5. All insurances required shall provide that there shall be no material amendments or modifications without the prior written consent of the Owner and that neither the Bareboat Charterer nor an charterer may declare or agree with any underwriters that the Vessel is a constructive, or compromised, or agreed, or arranged constructive total loss without the prior written consent of the Owner provided that no such consent shall be required in the event that the underwriters of the hull insurance on the Vessel shall have agreed to make payment in respect of the Vessel on the basis of a total loss in a net amount not less than the principal amount and interest required to be paid pursuant to the documents.

**With Respect to the vessel "PRESQUE ISLE"**

**INSURED:** Key Lakes II, Inc., as Demise Charterer and Vessel Manager , Wisconsin Central Ltd., as Time Charterer , Key Lakes, Inc. as Parent, GLF Great Lakes Corp. as Owner, Key Lakes Holding Co., Inc., as Parent, Keystone Shipping Co., as Agent, Chas. Kurz & Co., Inc., as Guarantor

**With Respect to the vessel "ARTHUR M. ANDERSON"**

**INSURED:** Key Lakes I, Inc., as Demise Charterer and Vessel Manager, Wisconsin Central Ltd., as Time Charterer, Key Lakes, Inc. as Parent, GLF Great Lakes Corp. as Owner, Key Lakes Holding Co., Inc., as Parent, Keystone Shipping Co., as Agent, Chas. Kurz & Co., Inc., as Guarantor

**With Respect to the vessel "ROGER BLOUGH"**

**INSURED:** Key Lakes I, Inc., as Demise Charterer and Vessel Manager, Wisconsin Central Ltd., as Time Charterer, Key Lakes, Inc. is Parent, GLF Great Lakes Corp. as Owner, Key Lakes Holding Co., Inc., as Parent, Keystone Shipping Co., as Agent, Chas. Kurz & Co., Inc., as Guarantor

**With Respect to the vessel "CARSON J. CALLAWAY"**

**INSURED:** Key Lakes I, Inc., as Demise Charterer and Vessel Manager, Wisconsin Central Ltd., as Time Charterer, Key Lakes, Inc. as Parent, GLF Great Lakes Corp. as Owner, Key Lakes Holding Co., Inc., as Parent, Keystone Shipping Co., as Agent, Chas. Kurz & Co., Inc., as Guarantor

**With Respect to the vessel "PHILLIP R. CLARKE"**

**INSURED:**             Key Lakes I, Inc., as Demise Charterer and Vessel Manager, Wisconsin Central Ltd., as Time Charterer, Key Lakes, Inc. as Parent, GLF Great Lakes Corp. as Owner, Key Lakes Holding Co., Inc., as Parent, Keystone Shipping Co., as Agent, Chas. Kurz & Co., Inc., as Guarantor

**With Respect to the vessel "EDWIN H. GOTT"**

**INSURED:**             Key Lakes I, Inc., as Demise Charterer and Vessel Manager, Wisconsin Central Ltd., as Time Charterer, Key Lakes, Inc. as Parent, GLF Great Lakes Corp. as Owner, Key Lakes Holding Co., Inc., as Parent, Keystone Shipping Co., as Agent, Chas. Kurz & Co., Inc., as Guarantor

**With Respect to the vessel "JOHN G. MUNSON"**

**INSURED:**             Key Lakes I, Inc., as Demise Charterer and Vessel Manager, Wisconsin Central Ltd., as Time Charterer, Key Lakes, Inc. as Parent, GLF Great Lakes Corp. as Owner, Key Lakes Holding Co., Inc., as Parent, Keystone Shipping Co., as Agent, Chas. Kurz & Co., Inc., as Guarantor.

# INFORMATION

(Re)insurer(s) have seen documents to support the assessment of the risk at the time of underwriting including but not limited to the following:

Claims record.

## CONTRACT ADMINISTRATION AND ADVISORY SECTIONS

## SUBSCRIPTION AGREEMENT

**SLIP LEADER**
The Slip Leader is:
Lloyd's Syndicate XLC 2003

In respect of electronic lines, the Slip Leader is as defined in Security Details herein.

**BUREAU(X) LEADER(S)**
The Bureau(x) Leader(s) (where applicable) is:
ILU Lead: Allianz Global Corp & Specialty

**BASIS OF AGREEMENT TO CONTRACT CHANGES**
General Underwriting Agreement (February 2014) with:

☐ Marine Cargo Schedule (April 2013)
☒ Marine Hull Schedule (May 2002)
☐ Liability Schedule (June 2004)

except as below:

- Extensions to any Premium Payment Warranty (PPW), Premium Payment Condition (PPC), Prompt Payment Discount (PPD) or Settlement Due Date (SDD) are to be agreed by the Slip Leader only;

- When details of agreed endorsements are required to be provided to following (re)insurer(s), email and/or other electronic means may be used by Aon UK Limited.

Wherever practicable, between the broker and each (re)insurer which have at any time the ability to send and receive ACORD messages:

1. the broker agrees that any proposed contract change will be requested via an 'ACORD message' or using an ACORD enabled electronic trading platform;

2. whilst the parties may negotiate and agree any contract change in any legally effective manner, each relevant (re)insurer agrees to respond via an appropriate 'ACORD message' or using an ACORD enabled electronic trading platform;

where a (re)insurer has requested to receive notification of any contract change the broker agrees to send the notification via an 'ACORD message' or using an ACORD enabled electronic trading platform.

**OTHER AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR PART TWO GUA CHANGES ONLY**
Where no Other Agreement Parties for contract changes are stated herein, the Agreement Parties will be the Slip Leader only.

**AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR THEIR PROPORTION ONLY**
Allianz Global Corp & Specialty and Hiscox Syndicate 0033.

**BASIS OF CLAIMS AGREEMENT**
As specified under the CLAIMS AGREEMENT PARTIES and to be managed in accordance with:

i) The SINGLE CLAIMS AGREEMENT PARTY ARRANGEMENTS – LMA9150 for claims or circumstances assigned as Single Claims Agreement Party Claims (SCAP

Claims) or, where it is not applicable, then the following shall apply as appropriate:-

ii) The Lloyd's Claims Scheme (Combined), or as amended or any successor thereto. iii) IUA claims agreement practices;

iv) The practices of any (re)insurer(s) electing to agree claims in respect of their own participation.

The applicable arrangements (scheme, agreement or practices) will be determined by the rules and scope of said arrangements.

Unless otherwise detailed in the Risk Details, the Slip Leader may instruct any third party expert to investigate and adjust any claim or circumstance notified to the contract.

Notwithstanding anything contained in the above to the contrary, any ex gratia payments to be agreed by each (re)insurer for their own participation

**CLAIMS AGREEMENT PARTIES**

A.   For In-scope SCAP Claims

Slip Leader only on behalf of all (re)insurers subscribing to:-

i)   this contract on the same contractual terms (other than premium and brokerage)

and

ii)   'these Arrangements' as defined within the LMA9150.

For the purposes of calculating the Threshold Amount, the sterling rate on the date that a financial value of the claim is first established by the Slip Leader, shall be used and the rate of exchange shall be the Bank of England spot rate for the purchase of sterling at the time of the deemed conversion.

B.   For all other claims:

The Lead Claims Agreement Party is deemed to be the Slip Leader unless otherwise specified here.

For Lloyd's syndicates, the leading Lloyd's syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate.

The second Lloyd's syndicate is Hiscox syndicate HIS 33.

For company (re)insurers, all IUA subscribing companies agree to follow the IUA claims agreement practices

All other subscribing (re)insurers, each in respect of their own participation, that are not party to the Lloyd's or IUA claims agreement practices, agree to follow the decisions of the Lloyd's and IUA claims agreement parties or the lead Claims Agreement Party where such is not otherwise the Lloyd's or IUA lead, excepting those that may have opted out below.

**CLAIMS ADMINISTRATION**

Aon UK Limited will notify claims agreement parties, and where applicable following (re)insurer(s) that do not participate in the Lloyd's and IUA claims schemes, of claims submitted to the contract, and provide material updates.   Wherever possible such notifications and updates will be given and administered via ECF or other electronic platform at Aon UK Limited's election.

Where a Lloyd's syndicate or IUA company is not an agreement party to the claim or circumstance (per CLAIMS AGREEMENT PARTIES A. above), they agree to accept correct ECF sequences

for administrative purposes to ensure information is circulated to all subscribing parties.

**RULES AND EXTENT OF ANY OTHER DELEGATED CLAIMS AUTHORITY**

None, unless otherwise specified here by any of the claim agreement parties shown above.

**EXPERT(S) FEES COLLECTION**

Aon UK Limited will not undertake the collection of any fee invoices rendered by third parties unless the fees form part of the (re)insured's claim or the work is for the exclusive benefit of the (re)insured.

In the event of Aon UK Limited not collecting third party fees the following applies:

Xchanging Claims Services Limited to collect fees for all slip security, including overseas (re)insurers unless the leading claims agreement party elects an alternate on a case by case basis.

**SETTLEMENT DUE DATE**

8th July 2020

In respect of electronic lines, please refer to the Settlement Information shown under Security Details herein which is deemed to supersede the above.

**INSTALMENT PREMIUM PERIOD OF CREDIT**

As per 1st instalment

**ADJUSTMENT PREMIUM PERIOD OF CREDIT**

60 days after expiry

**NOTICE OF CANCELLATION DELIVERY PROVISIONS**

Where the terms and conditions of this Contract allow for notice of cancellation to be issued, such notice of cancellation shall be provided to Aon UK Limited by email to aon.gbc.noc@aon.co.uk.

Failure to comply with this delivery requirement will make the notice null and void.

Delivery of the notice in accordance with this requirement will cause it to be effective irrespective of whether Aon UK Limited has acknowledged receipt.

**BUREAUX ARRANGEMENTS**

Aon UK Limited will submit de-linked accounts to Xchanging Ins-Sure Services Ltd (XIS) where possible.

In respect of any PPW, PPC, PPD or SDD the following apply:

- Premium payment requirements are deemed met by presentation of premium/accounts to XIS on or before the SDD and will not be recorded as a late signing or payment;

- The SDD is deemed in all instances to be the same as the PPW, PPC or PPD due date;

- Where the PPW, PPC or PPD has been updated then the SDD shall be deemed to be updated in parallel, unless otherwise stated to the contrary;

- The PPW, PPC, PPD or SDD shall not be deemed to be breached if the original presentation of the electronic submission to XIS is in time, but subsequently amendments

to the electronic submission are notified as being required to enable the premium signing to be completed. In such event Aon UK Limited shall have an additional period of seven days from such notification to complete the amendments and resubmit the electronic submission to XIS;

- Where a PPW, PPC, PPD or SDD falls on a weekend or public holiday, presentation to XIS on the next working day will be deemed in compliance with the PPW,PPC, PPD or SDD.

Aon may present For Declaration Only (FDO) signings as and when required.

(Re)insurer(s) hereby agree that any premium payable in instalments under this contract will be processed as delinked Additional Premium entries other than when submitted under the Deferred Account Scheme. However any annual instalments to be allocated to respective year of account.

(Re)insurer(s) authorise XIS to issue separate signing numbers and dates for their participations only and issue a single claims FDO signing where applicable.

Where payments are received by Aon UK Limited in convertible currencies, (re)insurer(s) agree to accept/settle accounts at rate(s) of exchange obtained by Aon UK Limited.

In respect of convertible currencies, (re)insurer(s) instruct XIS to accept settlement in any valid settlement currency as determined by Aon UK Limited.

In the event of this contract stating multiple insurance and/or reinsurance premiums (each to be paid from a different source); and/or separate entries/sections for taxation/regulation reporting purposes, XIS are instructed to leave the premium advice notes ungrouped so that each can be released separately once paid by the respective client.

In the event of partial premium received by Aon UK Limited, (re)insurer(s) agree to accept premium as paid to and endorsed by Aon UK Limited.

XIS are authorised to sign premium from individual Insureds / territories / sections separately as and when received by Aon UK Limited.

(Re)insurers agree that Aon UK Limited may settle premiums for this contract/release de-linked premium for this contract into settlement at different times.

**NON BUREAUX ARRANGEMENTS**

Where Aon accounts electronically with (re)insurers and notwithstanding anything to the contrary contained herein, premium due in respect of this contract which is available for settlement and presented to (re)insurers in a Technical Account (TA) ACORD message on, or before the PPW, PPC or SDD; shall be deemed to satisfy said Premium Payment Terms.
The Technical Account (TA) will be settled within the following, eAccounting Financial Account (FA).

Where a PPW, PPC, PPD or SDD falls on a weekend or public holiday, presentation to (re)insurer(s) hereon as applicable on the next working day will be deemed in compliance with the PPW,PPC, PPD or SDD.

Where payments are received by Aon UK Limited in convertible currencies, (re)insurer(s) agree to accept/settle accounts at rate(s) of exchange obtained by Aon UK Limited.

In respect of convertible currencies, (re)insurer(s) agree to accept settlement in any valid settlement currency as determined by Aon UK Limited.

In the event of partial premium received by Aon UK Limited, (re)insurer(s) agree to accept premium as paid to and endorsed by Aon UK Limited.

All non-XIS companies hereon hereby authorise the leading non-XIS company or XIS (where the companies lead insurer is a member of XIS) to sign policies, endorsements or renewal receipts on their behalf without production of signed authorisation forms or equivalent documentation.

# FISCAL AND REGULATORY

**TAX PAYABLE BY
(RE)INSURER(S):**          None

**COUNTRY OF ORIGIN:**     United States of America

**REGULATORY RISK
LOCATION:**                Risk Locations for Non EEA Section: United States of America.

**OVERSEAS BROKER:**       Aon Risk Services Northeast Inc
                           One Liberty Plaza
                           165 Broadway
                           Suite 3201
                           New York 10006
                           United States of America

**US CLASSIFICATION:**     Non-Regulated   – MAT exemption

**ALLOCATION OF
PREMIUM TO CODING:**       Section 1: 100% 'T'
                           Section 2: 100% 'B'.

                           In respect of electronic lines, please refer to the Settlement
                           Information shown under Security Details herein.

**REGULATORY CLIENT
CLASSIFICATION:**          Large Risk

# BROKER REMUNERATION AND DEDUCTIONS

**TOTAL BROKERAGE:** ███

**OTHER DEDUCTIONS
FROM PREMIUM:**          As contained within Risk Details.

# SECURITY DETAILS

**(RE)INSURER'S LIABILITY:**

**(Re)insurer's liability several not joint**
The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.
The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.
In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**
Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".
Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines.
Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

LMA3333 (amended)

**ORDER HEREON:** 100% of 100% of Sum(s) Insured

**BASIS OF WRITTEN LINES:**
- ☒ Percentage of Whole
- ☐ Percentage of Order
- ☐ Part of Whole
- ☐ Part of Order

**BASIS OF SIGNED LINES:**
- ☒ Percentage of Whole
- ☐ Percentage of Order
- ☐ Part of Whole
- ☐ Part of Order

**SIGNING PROVISIONS:**

In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the (re)insurers.

However:

a) in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

b) the (re)insured may elect for the disproportionate signing of (re)insurers' lines, without further specific agreement of (re)insurers, providing that any such variation is made prior to the commencement date of the period of insurance, and that lines written "to stand" may not be varied without the documented agreement of those (re)insurers.

The signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

**WRITTEN LINES:** As per attached

In a co-insurance placement, following (re)insurers may, but are not obliged to, follow the premium charged by the lead (re)insurer.

(Re)insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.

# SECURITY DETAILS

### REFERENCES

UMR (Unique Market Reference): B1526MAHUL2000379

Date contract printed to PDF: 16:52 07 May 2020

# SIGNED UNDERWRITERS

**Chubb**

James May

| T - H&M | | | |
|---|---|---|---|

**Chubb**

James May

| **Written Line** | 6.00% | **Signed Line** | 6.00% |
|---|---|---|---|
| **Agreed on** | 13:28 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 2488 CGM, London, England | | 6.00% | 6.00% |

**Bound**

| | *Lloyd's Stamp:* | 2488 |
|---|---|---|
| | *LORS Code:* | L2488 |
| | *Reference:* | aoqd3kyg0701 |
| | *Description:* | T |

| B - IV | | | |
|---|---|---|---|

**Chubb**

James May

| **Written Line** | 6.00% | **Signed Line** | 6.00% |
|---|---|---|---|
| **Agreed on** | 13:28 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 2488 CGM, London, England | | 6.00% | 6.00% |

**Bound**

| | *Lloyd's Stamp:* | 2488 |
|---|---|---|
| | *LORS Code:* | L2488 |
| | *Reference:* | ayqd3kyg0701 |
| | *Description:* | B |

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 30 of 41   Document 1-1

**Hiscox Syndicates**

Brendan Flood

### T - H&M

**Hiscox Syndicates**

Brendan Flood

| | | | |
|---|---|---|---|
| **Written Line** | 12.00% | **Signed Line** | 12.00% |
| **Agreed on** | 15:02 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 0033 HIS, London, England | | 12.00% | 12.00% |

**Bound**

| | | |
|---|---|---|
| *Lloyd's Stamp:* | 0033 | |
| *LORS Code:* | L0033 | |
| *Reference:* | 04EAX200AHAA | |
| *Description:* | | |
| *Risk Code(s):* | T | |

### B - IV

**Hiscox Syndicates**

Brendan Flood

| | | | |
|---|---|---|---|
| **Written Line** | 12.00% | **Signed Line** | 12.00% |
| **Agreed on** | 15:02 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 0033 HIS, London, England | | 12.00% | 12.00% |

**Bound**

| | | |
|---|---|---|
| *Lloyd's Stamp:* | 0033 | |
| *LORS Code:* | L0033 | |
| *Reference:* | 04EAX200BHTA | |
| *Description:* | | |
| *Risk Code(s):* | B | |

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 31 of 41   Document 1-1

**Markel International Limited**

Kate Gordge

| **T - H&M** | | | | |
|---|---|---|---|---|
| **Markel International Limited** | | | | |
| Kate Gordge | | | | |
| **Written Line** | 5.00% | | **Signed Line** | 5.00% |
| **Agreed on** | 11:59 07 May 2020 | | | |
| **For and on behalf of:** | | | **Written Line** | **Signed Line** |
| Lloyd's Underwriter Syndicate No. 3000 MKL, London, England | | | 5.00% | 5.00% |
| **Bound** | | | | |
| | *Lloyd's Stamp:* | 3000 | | |
| | *LORS Code:* | L3000 | | |
| | *Reference:* | CA1697A20MAA | | |
| | *Description:* | | | |

| **B - IV** | | | | |
|---|---|---|---|---|
| **Markel International Limited** | | | | |
| Kate Gordge | | | | |
| **Written Line** | 5.00% | | **Signed Line** | 5.00% |
| **Agreed on** | 11:59 07 May 2020 | | | |
| **For and on behalf of:** | | | **Written Line** | **Signed Line** |
| Lloyd's Underwriter Syndicate No. 3000 MKL, London, England | | | 5.00% | 5.00% |
| **Bound** | | | | |
| | *Lloyd's Stamp:* | 3000 | | |
| | *LORS Code:* | L3000 | | |
| | *Reference:* | CA1697B20MAA | | |
| | *Description:* | | | |

Case 1:23-cv-00128-WCG    Filed 01/31/23    Page 32 of 41    Document 1-1

**Royal and Sun Alliance Insurance PLC**

Joseph Smith

| **T - H&M** | | | |
|---|---|---|---|

**Royal and Sun Alliance Insurance PLC**

Joseph Smith

| **Written Line** | 10.00% | **Signed Line** | 10.00% |
|---|---|---|---|
| **Agreed on** | 12:31 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| THE MARINE INSURANCE COMPANY LIMITED: 3319-03-0 | | 10.00% | 10.00% |

**Bound as XIS Leader**

| | *XIS Code:* | 3319030 | |
|---|---|---|---|
| | *LORS Code:* | A11447 | |
| | *Reference:* | H079622Q20AA | |
| | *Description:* | T | |

| **B - IV** | | | |
|---|---|---|---|

**Royal and Sun Alliance Insurance PLC**

Joseph Smith

| **Written Line** | 10.00% | **Signed Line** | 10.00% |
|---|---|---|---|
| **Agreed on** | 12:31 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| THE MARINE INSURANCE COMPANY LIMITED: 3319-03-0 | | 10.00% | 10.00% |

**Bound as XIS Leader**

| | *XIS Code:* | 3319030 | |
|---|---|---|---|
| | *LORS Code:* | A11447 | |
| | *Reference:* | H079622Q20BA | |
| | *Description:* | B | |

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 33 of 41   Document 1-1

**Talbot Underwriting Ltd**

Benjamin Ewen

| **T - H&M** | | | | |
|---|---|---|---|---|

**Talbot Underwriting Ltd**

Benjamin Ewen

| **Written Line** | 8.00% | **Signed Line** | 8.00% |
|---|---|---|---|
| **Agreed on** | 15:32 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 1183 TAL, London, England | | 8.00% | 8.00% |

**Bound**

| | Lloyd's Stamp: | 1183 |
|---|---|---|
| | LORS Code: | L1183 |
| | Reference: | ATF018496U20 |
| | Description: | |
| | Risk Code(s): | T |

| **B - IV** | | | | |
|---|---|---|---|---|

**Talbot Underwriting Ltd**

Benjamin Ewen

| **Written Line** | 8.00% | **Signed Line** | 8.00% |
|---|---|---|---|
| **Agreed on** | 15:32 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 1183 TAL, London, England | | 8.00% | 8.00% |

**Bound**

| | Lloyd's Stamp: | 1183 |
|---|---|---|
| | LORS Code: | L1183 |
| | Reference: | ATF018496U20 |
| | Description: | |
| | Risk Code(s): | B |

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 34 of 41   Document 1-1

**Arch Insurance International**

Danielle Mason

| **T - H&M** | | | |
|---|---|---|---|
| **Arch Insurance International** | | | |
| Danielle Mason | | | |
| **Written Line** | 7.5% | **Signed Line** | 7.5% |
| **Agreed on** | 14:43 07 May 2020 | | |
| **For and on behalf of:** | | **Written Line** | **Signed Line** |
| Arch Insurance (UK) Limited, LIRMA A6303, London, England | | 7.5% | 7.5% |
| **Bound** | | | |
| | *XIS Code:* | A6303 | |
| | *Reference:* | 054002012020 | |
| | *Description:* | T | |

| **B - IV** | | | |
|---|---|---|---|
| **Arch Insurance International** | | | |
| Danielle Mason | | | |
| **Written Line** | 7.5% | **Signed Line** | 7.5% |
| **Agreed on** | 14:43 07 May 2020 | | |
| **For and on behalf of:** | | **Written Line** | **Signed Line** |
| Arch Insurance (UK) Limited, LIRMA A6303, London, England | | 7.5% | 7.5% |
| **Bound** | | | |
| | *XIS Code:* | A6303 | |
| | *Reference:* | 054002022020 | |
| | *Description:* | B | |

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 35 of 41   Document 1-1

**Apollo Syndicate Management Ltd**

Iain Henstridge

### T - H&M

**Apollo Syndicate Management Ltd**

Iain Henstridge

| **Written Line** | 5.00% | **Signed Line** | 4.5% |
|---|---|---|---|
| **Agreed on** | 16:49 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Apollo Hull Consortium 9595 2019. All underwriters as per LPSO Registered Consortium No 9595 | | 5.00% | 4.5% |

**Bound**

| | *Lloyd's Stamp:* | 9595 |
|---|---|---|
| | *Reference:* | 20MH55236101 |
| | *Description:* | |
| | *Risk Code(s):* | T |

### B - IV

**Apollo Syndicate Management Ltd**

Iain Henstridge

| **Written Line** | 5.00% | **Signed Line** | 4.5% |
|---|---|---|---|
| **Agreed on** | 16:49 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Apollo Hull Consortium 9595 2019. All underwriters as per LPSO Registered Consortium No 9595 | | 5.00% | 4.5% |

**Bound**

| | *Lloyd's Stamp:* | 9595 |
|---|---|---|
| | *Reference:* | 20MH55236101 |
| | *Description:* | |
| | *Risk Code(s):* | B |

Case 1:23-cv-00128-WCG    Filed 01/31/23    Page 36 of 41    Document 1-1

**Ascot Syndicate**

Sophie Macey

| **T - H&M** | | | | |
|---|---|---|---|---|

**Ascot Syndicate**

Sophie Macey

| **Written Line** | | 10.00% | **Signed Line** | 10.00% |
|---|---|---|---|---|
| **Agreed on** | | 12:50 07 May 2020 | | |

| **For and on behalf of:** | | | **Written Line** | **Signed Line** |
|---|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 1414 ASC, London, England | | | 10.00% | 10.00% |

**Bound**

| | *Lloyd's Stamp:* | 1414 | | |
|---|---|---|---|---|
| | *LORS Code:* | L1414 | | |
| | *Reference:* | HA20AS660RJX | | |
| | *Description:* | | | |

| **B - IV** | | | | |
|---|---|---|---|---|

**Ascot Syndicate**

Sophie Macey

| **Written Line** | | 10.00% | **Signed Line** | 10.00% |
|---|---|---|---|---|
| **Agreed on** | | 12:50 07 May 2020 | | |

| **For and on behalf of:** | | | **Written Line** | **Signed Line** |
|---|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 1414 ASC, London, England | | | 10.00% | 10.00% |

**Bound**

| | *Lloyd's Stamp:* | 1414 | | |
|---|---|---|---|---|
| | *LORS Code:* | L1414 | | |
| | *Reference:* | HA20AS660RJX | | |
| | *Description:* | | | |

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 37 of 41   Document 1-1

**XL Catlin**

Matt Gysbers

| T - H&M | | |
|---|---|---|

**XL Catlin**

Matt Gysbers

| **Written Line** | 12.00% | **Signed Line** | 12.00% |
|---|---|---|---|
| **Agreed on** | 13:56 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 2003 XLC, London, England | | 12.00% | 12.00% |

**Bound as Slip Leader, Lloyd's Leader**

| | *Lloyd's Stamp:* | 2003 |
|---|---|---|
| | *LORS Code:* | L2003 |
| | *Reference:* | TX4000728794 |
| | *Description:* | |
| | *Risk Code(s):* | T |

**Line Conditions**

Line to stand

| B - IV | | |
|---|---|---|

**XL Catlin**

Matt Gysbers

| **Written Line** | 12.00% | **Signed Line** | 12.00% |
|---|---|---|---|
| **Agreed on** | 13:56 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 2003 XLC, London, England | | 12.00% | 12.00% |

**Bound as Slip Leader, Lloyd's Leader**

| | *Lloyd's Stamp:* | 2003 |
|---|---|---|
| | *LORS Code:* | L2003 |
| | *Reference:* | TE1000728795 |
| | *Description:* | |
| | *Risk Code(s):* | B |

**Line Conditions**

Line to stand

Case 1:23-cv-00128-WCG    Filed 01/31/23    Page 38 of 41    Document 1-1

**Allianz Global Corporate and Specialty SE**

Ashley Hammond

| T - H&M | | | |
|---|---|---|---|

**Allianz Global Corporate and Specialty SE**

Ashley Hammond

| **Written Line** | 10.00% | **Signed Line** | 10.00% |
|---|---|---|---|
| **Agreed on** | 12:54 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Allianz Global Corporate and Specialty SE, Marine, XIS 3823014 | | 10.00% | 10.00% |

**Bound**

| | *XIS Code:* | 3823014 |
|---|---|---|
| | *Reference:* | GBM131675200T |
| | *Description:* | "T" |

**Line Conditions**

Line to stand

| B - IV | | | |
|---|---|---|---|

**Allianz Global Corporate and Specialty SE**

Ashley Hammond

| **Written Line** | 10.00% | **Signed Line** | 10.00% |
|---|---|---|---|
| **Agreed on** | 12:54 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Allianz Global Corporate and Specialty SE, Marine, XIS 3823014 | | 10.00% | 10.00% |

**Bound**

| | *XIS Code:* | 3823014 |
|---|---|---|
| | *Reference:* | GBM131675200B |
| | *Description:* | "B" |

**Line Conditions**

Line to stand

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 39 of 41   Document 1-1

**Aon Underwriting Managers**

Julia McHale

| T - H&M | | | |
|---|---|---|---|

**Aon Underwriting Managers**

Julia McHale

| **Written Line** | 15.00% | **Signed Line** | 15.00% |
|---|---|---|---|
| **Agreed on** | 14:21 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| ACT3 4515 B1526CBSPS2000009 Marine Hull - QPS 5555 (40.6666%), LIB 4472 (21.9167%), RNR 1458 (19.2067%), AFB 3623 (18.21%) | | 15.00% | 15.00% |

**Bound**

| | *Lloyd's Stamp:* | 4515 |
|---|---|---|
| | *Reference:* | ACT20T00001 |
| | *Description:* | |
| | *Risk Code(s):* | T |

**Line Conditions**

All endorsements to be provided to Aon Underwriting Managers

| B - IV | | | |
|---|---|---|---|

**Aon Underwriting Managers**

Julia McHale

| **Written Line** | 15.00% | **Signed Line** | 15.00% |
|---|---|---|---|
| **Agreed on** | 14:21 07 May 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| ACT3 4515 B1526CBSPS2000009 Marine Hull - QPS 5555 (40.6666%), LIB 4472 (21.9167%), RNR 1458 (19.2067%), AFB 3623 (18.21%) | | 15.00% | 15.00% |

**Bound**

| | *Lloyd's Stamp:* | 4515 |
|---|---|---|
| | *Reference:* | ACT20B00001 |
| | *Description:* | |
| | *Risk Code(s):* | B |

**Line Conditions**

All endorsements to be provided to Aon Underwriting Managers

Case 1:23-cv-00128-WCG   Filed 01/31/23   Page 40 of 41   Document 1-1

# SETTLEMENT INFORMATION

**T - H&M**

### Allocation of Premium to Coding

T at 100.00%

### Allocation of Premium to Year of Account

2020

### Terms of Settlement

| | |
|---|---|
| Settlement Due Date: | 08 July 2020 |
| Instalment Premium Period of Credit: | 60 day(s) |
| Adjustment Premium Period of Credit: | 60 day(s) |

THE MARINE INSURANCE COMPANY LIMITED: 3319-03-0
**Leading XIS Company**

Joseph Smith

Lloyd's Underwriter Syndicate No. 2003 XLC, London, England
**Bureau Leader and Lloyd's Leader**

Matt Gysbers

**B - IV**

### Allocation of Premium to Coding

B at 100.00%

### Allocation of Premium to Year of Account

2020

### Terms of Settlement

| | |
|---|---|
| Settlement Due Date: | 08 July 2020 |
| Instalment Premium Period of Credit: | 60 day(s) |
| Adjustment Premium Period of Credit: | 60 day(s) |

THE MARINE INSURANCE COMPANY LIMITED: 3319-03-0
**Leading XIS Company**

Joseph Smith

Lloyd's Underwriter Syndicate No. 2003 XLC, London, England
**Bureau Leader and Lloyd's Leader**

Matt Gysbers

Case 1:23-cv-00128-WCG Filed 01/31/23 Page 41 of 41 Document 1-1